UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROGER J. HALDE,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:19-cv-01247-EJY<br><br>**ORDER** |

Presently before the Court is Plaintiff's Motion for Reversal and/or Remand (ECF No. 17), and Defendant's Motion to Remand and Response to Plaintiff's Motion for Reversal and/or Remand. ECF Nos. 22 and 23.[1] Plaintiff Roger J. Halde seeks judicial review of the partially favorable decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") granting his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties agree remand is warranted but disagree on the appropriate remedy. *Compare* ECF No. 17 at 1-2 ("Halde hereby seeks an order from the Court reversing the final decision of the Commissioner and ordering the payment of benefits.") *with* ECF No. 22 at 5 ("The Court should remand for further proceedings to allow the ALJ to remedy deficiencies in the decision.") (internal alterations omitted). For the reasons below, the undersigned remands this case to the Social Security Administration for an immediate payment of benefits.

**I.    BACKGROUND**

On February 19, 2014, Plaintiff filed an application for DIB alleging a July 30, 2013 onset date of disability. Administrative Record ("AR") 63, 80. The Commissioner denied Plaintiff's claims by initial determination on July 10, 2014, and upon reconsideration on January 12, 2015. AR 97-100, 102-04. On March 5, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 105. After conducting an in-person hearing on August 25, 2015 (AR 43-62,

---

[1] Because ECF Nos. 22 and 23 refer to the same document filed by the Commissioner, the undersigned only cites to ECF No. 22 for the sake of conciseness.

118-19), ALJ Christopher R. Daniels issued his determination on October 14, 2015, finding Plaintiff not disabled. AR 22-35. The ALJ's decision became the final decision of the Commissioner after the Appeals Council denied Plaintiff's request for review. AR 1-6; *see also* 42 U.S.C. § 405(h).

Plaintiff sought judicial review of the ALJ's decision in this Court. AR 1138-40; *see also Halde v. Colvin*, 2:16-cv-01042-JAD-CWH. On May 16, 2017, this Court affirmed the Commissioner's adverse disability determination. AR 1150-59. Plaintiff appealed the decision to the Ninth Circuit, which not only vacated and remanded the judgment to the district court (AR 1169), but also ordered the district court to remand the case to the Social Security Administration for further proceedings. *Halde*, 2:16-cv-01042-JAD-CWH (ECF No. 28). In turn, the Appeals Council sent this case back to the ALJ, instructing him to remedy errors at step five of the sequential evaluation process. AR 1170-74.

On May 19, 2016, Plaintiff filed a subsequent DIB claim, which was consolidated with his initial DIB application. AR 1173. After conducting a second in-person hearing on January 19, 2019 (AR 1045-84), the ALJ issued a partially favorable decision on April 30, 2019 finding Plaintiff disabled as of November 16, 2018, the date of his 50th birthday. AR 1016-35. Plaintiff filed the instant civil action seeking review of this decision.[2] AR 1138-40.

## II.     STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

---

[2]     Plaintiff did not need to exhaust administrative review through the Appeals Council a second time because this case was remanded for further consideration. 20 C.F.R. § 404.984(a).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.   DISCUSSION

### A.   Establishing Disability under the Act

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

> (a)   the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b)   the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

*Id*. at 1098-99 (internal alterations omitted).

**B.**     **Summary of the ALJ's Findings on Remand**

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since his alleged onset date of July 30, 2013. AR 1024, *citing* 20 C.F.R. 404.1571 *et seq*. At step two, the ALJ found Plaintiff suffered from medically determinable severe impairments consisting of "degenerative disc disease of the lumbar and cervical spines, fibromyalgia, depression with paranoia, general anxiety disorder, and a history of alcoholism with alcoholic polyneuropathy." *Id*., *citing* 20 C.F.R. 404.1520(c). At step three, the ALJ found Plaintiff's impairment or combination of

4

impairments did not meet or medically equal the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 1028, *citing* 20 C.F.R. 404.1520(d), 404.1525 and 404.1526.

In preparation for step four, the ALJ found Plaintiff had the residual functional capacity ("RFC")[3] to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except occasionally balancing, stooping, kneeling, and crouching, and crawling, but he is unable to climb. He could tolerate occasional exposure to fumes, odors, dust, gases, and poor ventilation. He is able to understand, remember, and carry out simple, routine[, and] repetitive tasks; and he is able to interact with coworkers and supervisors, but is unable to interact with the general public, and can adapt to routine work changes.

AR 1030.

At step four, the ALJ determined that "the claimant has been unable to perform any past relevant work" since July 30, 2013. AR 1033. Specifically, the ALJ determined Plaintiff's RFC prevented him from performing his past relevant "light skilled work" as a "card room manager," Dictionary of Occupational Titles or "DOT" number 343.137-010, or as a "gambling dealer," DOT number 343.462-010. *Id*.

In preparation for step five, the ALJ noted that:

> 7. Prior to the established disability onset date, the claimant was a younger individual age 45-49. On November 17, 2018, the claimant's age category changed to an individual closely approaching advanced age (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Prior to November 16, 2018, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on November 17, 2018, the claimant has not been able to transfer job skills to other occupations (See [Social Security Ruling or "]SSR["] 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Prior to November 16, 2018, the date the claimant's age category changed, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

AR 1033-34. The ALJ went on:

---

[3] "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

5

> To determine the extent to which [Plaintiff's] limitations eroded the unskilled sedentary occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as a document preparer . . . ; an address[e]r . . . ; and[,] an election clerk . . . . I find that the aforementioned jobs described by the [VE] exist in significant numbers in the national economy. The [VE] testified that these jobs exist in several regions of the economy. He also testified that the position of election clerk, per the DOT, was a full time position, similar to a municipal office clerk.
>
> After the hearing, [Plaintiff's counsel] submitted rebuttal evidence to the [VE's] testimony, and requested a supplemental hearing to permit the [VE] to respond . . . . The undersigned has considered [Plaintiff's counsel's] argument, and overrule them [sic] in their [sic] entirety and credit the testimony of Lawrence Haney, the [VE].
>
> Pursuant to SSR 00-4p, the undersigned has determined that the [VE's] testimony is consistent with the information contained in the [DOT].

AR 1034.

The ALJ thereafter found that "[b]eginning on November 16, 2018, the date the claimant's age category changed, considering the claimant's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c) and 404.1566)." AR 1035. The ALJ concluded that "[t]he claimant was not disabled prior to November 16, 2018, but became disabled on that date and has continued to be disabled through the date of this decision. His disability is expected to last twelve months past the onset date (20 CFR 404.1520(g))." *Id*. Accordingly, the ALJ granted Plaintiff's application for DIB beginning November 16, 2018 pursuant to sections 216(i) and 223(d) of the Social Security Act. *Id*.

**C.    Step Five Analysis**[4]

    **1.    VE testimony at Plaintiff's first administrative hearing.**

At Plaintiff's first administrative hearing on August 25, 2015, VE Lawrence Haney described Plaintiff's past relevant light duty jobs as "bartender," DOT number 312.474-010, specific vocational preparation or "SVP" level 3; "gaming dealer," DOT number 343.464-010, SVP level 5;

---

[4] The Court only summarizes the VE testimony offered at Plaintiff's administrative hearings and the instructions the Appeals Council provided to the ALJ on remand because the errors at step five of the sequential evaluation process form the sole bases for the parties' contentions.

and, "poker [or card room] supervisor," DOT number 343.137-014, SVP level 6.[5] AR 58. The ALJ asked the VE to imagine a hypothetical:

> younger individual with a high school diploma education. . . . The individual is unable to . . . climb[]. The individual could occasionally balance, stoop, kneel, crouch, and crawl. The individual could tolerate occasional exposure to fumes, odors, dusts, gases, and poor ventilation. The individual could occasionally interact with coworkers, supervisors, and the general public. With that level of limitations, could such an individual perform any of the Claimant's past work?

*Id*. The VE replied that the hypothetical individual would not be able to perform Plaintiff's past work at the sedentary level. AR 59. However, the VE testified that the hypothetical individual could perform the sedentary positions of "card player," DOT number 343.367-010, SVP level 4, with approximately 13,750 jobs nationally and 3,280 jobs in Nevada; "telephone order clerk," DOT number 209.567-014, SVP level 2, with approximately 20,000 jobs nationally and 146 jobs in Nevada; "telephone information clerk," DOT number 237.36[7]-046, SVP level 2, with approximately 139,082 jobs nationally and 1,170 jobs in Nevada; and, "charge account clerk," DOT number 205.367-014, SVP level 2,[6] with approximately 30,720 jobs nationally and 490 jobs in Nevada. AR 59-60.

The ALJ then asked the VE to:

> assume all the limitations from hypothetical one, [with the added limitation of] the individual . . . be[ing] off task up to 20 percent of the time due to the effects of his pain and his mental disorder. With that level of being off task, could such an individual perform any of the jobs you've identified?

AR 60. The VE replied that the hypothetical individual would be unable to perform any of the jobs he identified, nor any other available job in the Nevada or national economy. *Id*. The VE clarified his testimony as based on:

> a statistical analysis completed by the U.S. Department of Labor Statistics in March 2010, which was publicized indicating what the average number of sick days or

---

[5]   The SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App. C, 1991 WL 688702.

[6]   The VE adjusted the number of national and local jobs available for the telephone order clerk, telephone information clerk, and charge account clerk positions downwards because there were multiple titles sharing the same DOT number for each of these occupations. AR 59-60.

7

> paid leave days would be. . . . [W]ith employers of 500 or more workers, you have approximately 11 call-off days or sick days per year based on [being off task] 20 percent[ of the time].

*Id*.

On examination by Plaintiff's counsel, the VE testified that the hypothetical individual would be unable to perform any of the jobs identified above if he were to miss three days of work per month or more. AR 60-61. The VE testified that the card player position involves occasional contact with the public, whereas the other three office clerk positions only involve telephonic contact with the public: "You're talking on a telephone, so you're not dealing with anybody." *Id*.

On reexamination by the ALJ, the VE was asked whether his "testimony in response to [Plaintiff's] Counsel's questions didn't address issues covered by the DOT."[7] *Id*. (internal alteration omitted). The VE replied that was "[c]orrect." *Id*. The VE confirmed that he drew from his "education and training" for his responses. *Id*.

### 2.   Instructions provided to the ALJ on remand.

As explained above, Plaintiff appealed his adverse disability determination to the Ninth Circuit, which in turn vacated and remanded the judgment to the district court. AR 1169-74. Pursuant to the Ninth Circuit's mandate, the district court reversed the Commissioner's decision and remanded the case to the Social Security Administration for further proceedings. *Halde*, 2:16-cv-01042-JAD-CWH (ECF No. 28). The Appeals Council then sent this matter back to the ALJ for resolution of the following issues:

> The hearing decision did not identify or resolve apparent conflicts between the [VE's] testimony regarding the requirements of jobs identified at Step 5 and the information contained in the [DOT]. The [ALJ] found the claimant had the [RFC] to perform a range of sedentary work, including a limitation to occasional interaction with coworkers, supervisors, and the general public . . . . Based on the [VE's] testimony, the [ALJ] found the claimant could perform such occupations as a telephone quotation clerk, food and beverage order clerk, and charge account clerk (DOT #'s 205.367-014, 209.567-014 and 237.367-046) . . . . However, per the DOT, each of these positions require frequent talking and hearing, and dealing with people. The DOT describes the tasks required of the charge account clerk as conferring with customers to explain the type of charge plans available and assisting them with their applications. It describes the tasks required of the food and beverage clerk as taking orders over a telephone or intercom system, recording the orders, answering any questions, and making menu suggestions. The telephone

---

[7] The transcript of the first administrative hearing does not make clear whether the word "didn't" is a typographical error.

> quotation clerk position requires initiating and answering telephone calls from customers, providing information, and relaying calls to a registered representative at the customer's request. On questioning from the claimant's representative, the [VE] described the jobs identified at Step 5 as office clerk positions and explained that because the workers only speak on the telephone, they do not require occasional contact with the public . . . . The [VE] further clarified that his testimony was based on his experience as opposed to the DOT definitions . . . . However, it is unclear whether the [RFC] limitations to occasional interaction are limited to face-to-face interaction or include telephone interaction. . . . Further, the [ALJ] did not clarify or confirm whether the [VE's] assumption that telephone interaction did not qualify public contact was accurate. Accordingly, clarification is required to determine whether the claimant's occasional interaction limitations include interaction by telephone, and to resolve any conflicts between the information contained in the DOT and the [VE's] testimony at Step 5.

AR 1172-73. On remand, the Appeals Council ordered the ALJ to:

> Give further consideration to the claimant's maximum [RFC] and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and [SSR] 85-16 and 96-8p).
>
> Obtain supplemental evidence from a [VE] to clarify the effect of the assessed limitations on the claimant's occupational base ([SSR] 83-12, 83-14, 85-15, and/or 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The [ALJ] will ask the [VE] to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the [VE] evidence the [ALJ] will identify and resolve any conflicts between the occupational evidence provided by the [VE] and the information in the [DOT] and its companion publication, the Selected Characteristics of Occupations [or "SOC"] ([SSR] 00-4p).

AR 1173.

### 3.    VE testimony at Plaintiff's second administrative hearing.

At Plaintiff's second administrative hearing on January 29, 2019, VE Haney described Plaintiff's past two relevant light duty jobs as "card room manager," DOT number 347.137-010, SVP level 7, and "gambling dealer," DOT number 343.462-010, SVP level 5.[8] AR 1061. The ALJ asked the VE to imagine a hypothetical individual:

> with a high school education . . . . The individual could perform work at the sedentary level subject to the following limitations: The individual could occasionally balance, stoop, kneel, crouch, and crawl[, but w]ould be unable to climb. The individual could occasionally balance, stoop, kneel, crouch and crawl. The individual could tolerate occasional exposure to fumes, odors, dusts, gases[,] and poor ventilation. The individual could understand, remember[,] and carry out

---

[8] There is no explanation for why the VE identified three past relevant jobs at Plaintiff's first administrative hearing, but only two past relevant jobs at Plaintiff's second administrative hearing. *Compare* AR 58 *with* AR 1061.

      simple routine repetitive tasks. The individual could interact occasionally with co-workers and supervisors but is unable to interact with the general public and can adapt to routine work changes. With those limitations, . . . could such an individual perform any of the Claimant's past work?

AR 1061-62. The VE replied that the hypothetical individual would not be able to perform Plaintiff's past relevant work. AR 1062. However, the VE testified that the hypothetical individual would be able to perform the "SVP [level] 2, sedentary positions that the DOT indicates [involve] no people interaction," including "document preparer," DOT number 249.587-018, with approximately 28,743 jobs nationally; "addresser," DOT number 209.587-010, with approximately 8,622 jobs nationally; and, "election clerk," DOT number 205.367-030, with approximately 20,757 jobs nationally.[9] *Id*. The VE confirmed that his testimony was consistent with the DOT, and that these jobs exist in several regions of the United States. AR 1062-63. When asked by the ALJ whether the election clerk position is a full-time job, the VE equivocated and said the election clerk position is analogous to an "office clerk" or a "municipal office clerk" position. AR 1063.

      On examination by Plaintiff's counsel, the VE testified that the document preparer position is a "Level Three" job.[10] *Id*. The Court notes that the election clerk position is also a Level Three job. 205.367-030 ELECTION CLERK, DICOT 205.367-030. Plaintiff's attorney asked the VE if a hypothetical person limited to "simple, repetitive tasks" could "handle instructions in a variety of formats and deal with multiple variables during a work day," which roughly corresponds to the reasoning level requirement required of a Level Three job. *Id*.; *see also supra* n.10. The VE confirmed the hypothetical individual could do so because a "simple and repetitive" task designation refers to "an unskilled position." *Id*. Plaintiff's counsel countered that the reasoning level required to perform a given job is a separate issue from whether a position is designated as "unskilled," which

---

[9]     As instructed by the Appeals Council (AR 1173), the VE only identified the number of document preparer, addresser, or election clerk positions available in the national economy.

[10]     A Level Three occupation requires an individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702.

refers to how much time is required to vocationally train an employee.[11] AR 1064. The VE nonetheless confirmed that a person limited to simple and repetitive tasks can "deal[] with problems from several concrete variables in [or] from standardized situations," one of the reasoning requirements of a Level Three job. AR 1065; *see also supra* n.10.

Specifically, the VE testified that the document preparer position is simple and repetitive:

> [b]ecause you're dealing with the same thing over and over again. I think that would define repetition. Is it simple? You're . . . preparing documents. That's a simple type of a job. . . . [E]ven though it's a SVP [level] 2[ position, y]ou could probably learn that job in a few days. It's simple and it is repetitive.

*Id*. In contrast to this testimony, the VE confirmed that "when a job is truly repetitive, the DOT describes it as repetitive," which it does not do for the document preparer occupation. AR 1068; *see also* AR 1069. The VE further testified that the "temperaments" required for the document preparer position are as follows:

> First, performing a variety of duties. These fall under work situations. Work situations that involve frequent changes of tasks using different techniques, procedures[,] or degrees of attentiveness without loss of efficiency or composure. Second, work situations that involve adhering to and achieving exact levels of performance using precise measuring instruments, tools[,] or machines to obtain precise dimensions. Preparing exact verbal and numerical records and filing with precise instruments or specifications for material message procedures and techniques to obtain . . . specific standards.[12]

AR 1066-67.

Next, the VE read the DOT's description of the election clerk position into the record:

> Performs any combination of the following duties during elections. Complies [sic] and verifies voter lists for . . . official registration records. Requests identification of voters' polling place[s], obtain signatures and names of voters to prevent voting

---

[11] Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Social Security Administration] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are need. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568(a).

[12] The word "temperament" does not appear to have any specialized meaning in relation to Social Security cases.

11

> of unauthorized persons, distributes ballots to voters, [and] answers questions concerning voting procedure. Counts valid ballots and prepares official reports of election results.

AR 1070. Relying on an occupational software program called "Job Browser Pro," the VE testified that an election clerk belongs to the occupational group of general office clerks and, therefore, works all year round. AR 1070-71. Although the VE confirmed that an election clerk deals with the public (AR 1072), the VE reasoned that an election clerk could perform his job even if he could not tolerate contact with the public because an election clerk's "job duties could also be within . . . an office cubicle." AR 1073. The VE clarified that the DOT does not describe working in an office cubicle as a job duty expected of an election clerk. *Id*. Notwithstanding, the VE maintained his testimony is "consistent with how [he has] seen [election clerks] work within municipal settings." *Id*.

Plaintiff's counsel questioned the VE on Job Browser Pro's statistical methodologies.[13] AR 1075-81. Plaintiff's attorney also presented data from an online occupational repository called the Occupational Information Network ("O*NET") demonstrating that the work processors and typists occupational group, to which the addresser position belongs, involves "constant contact with others in 69 percent of jobs and [frequent] contact with others . . . 31 percent . . . of the time.[14] AR 1081.

To conclude, Plaintiff's counsel asked the VE to assume that the hypothetical person from the previous examples is "limited to sitting 6 hours in an 8-hour day. . . . [D]o the[] jobs [the VE provided] have the flexibility so that the person can stand at will 2 hours a day?" AR 1082. The VE said the jobs do not have such flexibility because "there's no sit/stand option in these positions." *Id*.

**D.    Issues Presented**

The ALJ determined that Plaintiff retained the RFC to perform sedentary work; understand, remember, and carry out simple, routine, and repetitive tasks; and, interact with coworkers and

---

[13] The Court does not discuss this portion of the transcript in detail because it has no impact on the decision today.
[14] "The U.S. Department of Labor . . . maintains a more detailed occupational database for use by federal agencies, the [O*NET,] that is built on the same and related data used in the [Occupational Outlook Handbook or] OOH," which "displays details such as wage, education, and training requirements, and job outlook, for hundreds of occupations." *Care v. Nielson*, CIVIL ACTION NO. 1:18-CV-04666-AT, 2020 WL 2528536, at *3 n.4; *id*. at *3 (N.D. Ga. May 18, 2020) (internal citations omitted). However, the "O*NET is not listed as a source of administrative notice that the agency uses, but the DOT is listed. 20 C.F.R. § 404.1569d). The ALJ only needs to resolve conflicts between VE testimony and one source – the DOT (and its companion publication the [SOC])." *Padilla v. Berryhill*, Case No. 2:18-cv-02126-VCF, 2020 WL 1244132, at *5 (D. Nev. Mar. 16, 2020), *citing* SSR 00-4p, 2000 WL 1898704. Accordingly, the Court does not discuss the O*NET in its analysis.

12

1 supervisors but not the general public. AR 1030. At the second administrative hearing, the VE
2 testified that Plaintiff could work as a document preparer, election clerk, or addresser. AR 1062.

3 Plaintiff contends the ALJ erred in failing to reconcile an apparent conflict between a RFC
4 limitation to simple, routine, and repetitive tasks, and the reasoning demands of the Level Three
5 document preparer and election clerk occupations. ECF No. 17 at 9. Plaintiff also argues the
6 remaining job—an addresser—is obsolete and does not exist in significant numbers in the national
7 economy. *Id*. at 13. The Court addresses Plaintiff's arguments below.

**1. The ALJ failed to reconcile the apparent conflict between a RFC limitation to simple, routine, and repetitive tasks and the Level Three reasoning requirements of the document preparer and election clerk jobs. This error was not harmless because the remaining addresser occupation may not exist in significant numbers in the national economy.**

Plaintiff argues a RFC limitation to simple, routine, and repetitive tasks raises an apparent conflict with the reasoning levels required of Level Three occupations. ECF No. 17 at 8, *citing Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). Plaintiff insists that the Commissioner recognizes the presence of this very conflict and "warns the vocational expert that he should be prepared to answer . . . question[s]" about this discrepancy. *Id*., *citing* SSA, Vocational Expert Handbook at p. 39 (Aug. 2017). Plaintiff contends neither the VE nor the ALJ resolved the conflict in accordance with the directives outlined in SSR 00-4p. *Id*. at 9. Instead, "[t]he ALJ found [the VE's] testimony consistent with the DOT in conflict with *Zavalin* and the *Handbook*." *Id*.

In *Zavalin*, the Ninth Circuit explained the ALJ's obligation at step five of the sequential evaluation process. 778 F.3d 842. First, an ALJ must "assess[] a claimant's residual functional capacity, defined as the most that a claimant can do despite physical and mental limitations caused by his impairments and related symptoms." *Id*. at 845 (internal citation and quotation marks omitted). Next, the ALJ must consider "potential occupations that the claimant may be able to perform." *Id*. (internal citation omitted). When "making this determination, the ALJ relies on the DOT, which is the SSA's primary source of reliable job information regarding jobs that exist in the national economy. . . . The DOT describes the requirements for each listed occupation, including the necessary General Educational Development ('GED') levels . . . ." *Id*. at 845-46 (internal citations and quotation marks omitted). Importantly, "[t]he GED levels include[] the reasoning

ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id*. (internal citation omitted). The ALJ will also rely "on the testimony of vocational experts who testify about specific occupations that a claimant can perform in light of his [RFC]." *Id*. (internal citations omitted). And, "to conclude the Step Five analysis, the ALJ determines whether, given the claimant's [RFC], age, education, and work experience, he actually can find some work in the national economy." *Id*. (internal citations and quotation marks omitted).

If there is "an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Id*. (internal citation omitted). In a case of conflict, such as exists here, "[t]he ALJ must ask the expert to explain the conflict and . . . determine whether the [VE's] explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination" pursuant to SSR 00-4p. *Id*. at 846 (internal citations and quotation marks omitted). Even if the ALJ commits an error at step five, however, the Court must affirm the disability determination if the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Applying the analysis set forth above, the court in *Zavalin* found "an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." 778 F.3d at 847. In addition, "because the ALJ failed to recognize an inconsistency, she did not ask the expert to explain why a person with Zavalin's limitation could nevertheless meet the demands of Level 3 Reasoning." *Id*. The Ninth Circuit found this error was not harmless because a "mixed record" of the plaintiff's educational and vocational successes failed to independently support the ALJ's step five finding. *Id*. at 848.

At present, the parties agree that the ALJ did not reconcile an apparent conflict between a simple, routine, and repetitive RFC limitation and the reasoning demands of a Level Three

14

occupation.[15]  *Compare* ECF No. 17 at 9 (Plaintiff argues "[t]he ALJ did not resolve the conflict.") *with* ECF No. 22 at 6 (the Commissioner concedes "the ALJ did not reconcile the apparent conflict between the RFC and the reasoning level requirement of the document preparer and election clerk jobs.").  Moreover, not only did the ALJ fail to ask the VE to explain the apparent conflict at the second administrative hearing, but the ALJ also found the VE's testimony "consistent with the information contained in the [DOT]" (AR 1034) without providing any "explan[ation] in the determination or decision how he . . . resolved the conflict." SSR 00-4p, 2000 WL 1898704.  This error was not harmless.[16]

If Plaintiff is unable to perform the Level Three document preparer and election clerk occupations, then the ALJ's decision is supported solely by the fact that he found Plaintiff could perform the addresser occupation. AR 1034, 1062.  Indeed, the Commissioner concedes that "[i]n light of the above deficiency, the remaining job—an addresser—must be available in significant numbers in order to serve as the basis for the ALJ's step five finding." ECF No. 22 at 6.  However, the VE testified at the second administrative hearing that there are 8,622 addresser jobs available in the national economy, which may not amount to a significant number. AR 1062; *see also Randazzo v. Berryhill*, 725 Fed. App'x 446, 448 (9th Cir. 2017) (internal citations omitted) ("The ALJ's error . . . was not harmless because the remaining 10,000 electrical accessories assembler jobs found by the expert may not amount to a significant number of jobs in the national economy.").  As Plaintiff correctly points out, it is "the Commissioner's burden of production to come forward [at step five of the sequential evaluation process] with substantial evidence that . . . a person with Halde's medical-vocational profile could perform" other work in the national economy. ECF No. 24 at 4 (internal citation omitted); *see also Tackett*, 180 F.3d at 1098.  The Commissioner failed to meet his burden on remand.  The Court agrees and concludes the ALJ committed reversible error in failing to reconcile the apparent conflict between the VE's testimony and the DOT.

---

[15]  Although the Court need not reach this point, the ALJ also failed to reconcile an additional apparent conflict. That is, the DOT provides that an election clerk "[p]erforms any combination of the following duties *during elections*," but the VE testified that an election clerk works all year round at the second administrative hearing. 205.367-030 ELECTION CLERK, DICOT 205.367-030 (emphasis added); *see also* AR 1071.

[16]  The Commissioner does not allege harmless error in his briefings and, therefore, has waived this argument. *Wilcox v. Comm'r*, 848 F.2d 1007, 1008 n.2 (9th Cir. 1998) ("[a]rguments not addressed in a brief are deemed abandoned").

## IV. REMEDY REQUEST

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (internal citation omitted). The Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (internal citations omitted). Under the "credit-as-true" rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and, (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs of credit-as-true test have been satisfied, however, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

The undersigned finds an immediate payment of benefits warranted in this matter. With respect to the first prong of the credit-as-true test, further administrative proceedings would not prove useful for resolution of any outstanding issues. The Commissioner disagrees, arguing that:

> [t]he step five issues discussed above can be remedied in the course of further proceedings, in which an ALJ will receive additional vocational expert testimony regarding whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, and ensure that any conflicts between vocational experts and the DOT are properly reconciled per SSR 00-4p.

ECF No. 22 at 7. The Commissioner's contentions are belied by the fact that the Ninth Circuit already vacated his final decision and remanded this case to the ALJ to remedy the errors at step five of the sequential evaluation analysis. AR 1172-73. "The Commissioner, having lost this appeal, should not have another opportunity to show that [Halde] is not credible any more than [Halde], had he lost, should have an opportunity for remand further proceedings to establish his credibility." *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

The second prong of the credit-as-true rule is met because the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, to find Plaintiff could perform other work. *Cf.*

16

*Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007) (remanding case for further proceedings because the court could not "determine whether substantial evidence supports the ALJ's step-five finding that [the plaintiff] could perform other work."). The third prong of the credit-as-true rule is satisfied because if the evidence at step five were credited as true, the ALJ would be required to find Plaintiff disabled. *Tackett*, 180 F.3d at 1098 ("If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."). Accordingly, the record does not leave serious doubt as to whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1021.

The Commissioner emphasizes that an award of benefits is "a rare and prophylactic exception to the well-established ordinary remand rule." ECF No. 22 at 7 (internal alteration, citation, and quotation marks omitted). The Court agrees; however, the Ninth Circuit has specifically endorsed departing from the ordinary remand rule as a "prophylactic measure" to justify "equitable concerns about the length of time that had elapsed since the claimant had filed her application." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (internal citation omitted). Notably, the Ninth Circuit has applied the credit-as-true test due to a claimant's advanced age and "severe delay" of seven years in her application. *Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009). This analysis is applicable here, where Plaintiff is closely approaching advanced age (AR 1033) and nearly six-and-a-half years have elapsed from the filing of Plaintiff's DIB application to date. AR 63, 80 (Halde "filed for [DIB] on 02/19/2014"). Exercising its discretion pursuant to Ninth Circuit precedent, the Court applies the credit-as-true doctrine and remands this case to the Social Security Administration for an immediate payment of benefits.

## V. CONCLUSION

The ALJ failed to reconcile an apparent conflict between a simple, routine, and repetitive RFC limitation with the reasoning requirements of Level Three occupations, including the document preparer and election clerk positions. This error was not harmless because the remaining job the VE opined Plaintiff could perform, the addresser position, may not be available in significant numbers in the national economy.

## VI. ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and/or Remand (ECF No. 17) is GRANTED, and that Defendant's Motion to Remand and Response to Plaintiff's Motion for Reversal and/or Remand (ECF Nos. 22 and 23) is DENIED.  This case is remanded to the Social Security Administration for an immediate payment of benefits to Plaintiff.  The Clerk of the Court is directed to enter judgment in accordance with this Order and close this case.

Dated this 3rd day of August, 2020.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE